### 10623.   ATLANTIC PAPER & PULP CORPORATION *v.* BOWEN.

By the amendment to the petition in this case (a suit against a builder for injuries from the collapse of a roof of a building upon which the plaintiff was working for the defendant) the case was taken out of the ruling in *Byrd* v. *Thompson,* 146 *Ga.* 300 (91 S. E. 100), on which was based the former decision in this case (23 *Ga. App.* 249, 97 S. E. 867). The amendment did not set out a new and distinct cause of action, and the petition as amended was not subject to the demurrers.

DECIDED DECEMBER 10, 1919.  REHEARING DENIED JANUARY 28, 1920.

Action for damages; from Chatham superior court—Judge Meldrim.   April 2, 1919.

*Travis & Travis, Hitch & Denmark,* for plaintiff in error.

*Oliver & Oliver,* contra.

BLOODWORTH, J.  On the former appearance of this case before this court it was held that "this case in principle is controlled by *Byrd* v. *Thompson,* 146 *Ga.* 300 (91 S. E. 100), and cit. The court erred in overruling the general demurrer to the petition." See 23 *Ga. App.* 250 (97 S. E. 868), where the allegations in the original petition are set out. After that decision and before the judgment of this court was made the judgment of the superior court, the plaintiff amended his petition, and, among other things, alleged that the defendant company had three vice-

principals, Wilbur, Stokes, and Overstreet, each of whom was an alter ego of the corporation; that they were in charge of the construction of the shed that collapsed and caused the injury to the plaintiff; that in behalf of the defendant company they had and exercised the power and authority of laying out, directing, supervising, and controlling the work of the employees on this job, of determining how the work should be done and seeing that it was done; that the defects which caused the collapse of the building "were not due to the negligence of fellow servants of petitioner," but "were defects of material and of construction furnished and erected under the supervision of the vice-principals of the defendant company, namely, Wilbur, Stokes and Overstreet;" that "just prior to the time petitioner and other employees were ordered upon the roof, the defendant company had made no inspection of the roof-girder H, or of the supports of the section of the building which collapsed;" that "petitioner did not know that such inspection had not been made, and did not know of the defects described, but relied, as he had a right to rely, upon the due performance of the duty of the defendant to its employees, and supposed that his employer would not send him upon a structure weak, defective and dangerous;" that "the defendant company knew of the defects and weakness of the roof-girder H. It knew of the defects and weakness of the support B; it knew of the condition of the ground underneath, and that the same was likely to settle. The defendant company knew that the end of the roof was likely to collapse; . . it knew that no inspection had been made; . . that petitioner had never worked about the end of the building or about the girder which collapsed. He did not know of the defects in the construction and erection of the roof-girder, its support, or the ground underneath. He knew none of the defects complained of, . . could not ascertain the same in the exercise of ordinary care, was in the exercise of ordinary care, and is free from fault. To petitioner the dangers and defects in the south end of the building were latent and concealed dangers, unknown to him, and not discoverable in the exercise of ordinary care. They were dangers known to the defendant company. . . The defendant company did not perform its duty to petitioner by warning him of the dangers by which he would be threatened." There is

also an allegation that "roof-girder H, the flooring joists on top thereof, and the sheathing nailed on top of the roof-flooring joists, were permanent structures. They had been completed." It is also alleged that "the weight of the roof-timbers, the sheathing, and the men doing the work was about 20,000 pounds." The allegations of negligence in the petition as amended are in part as follows: "in failing to determine and ascertain the amount of weight of the various timbers, building material, and workmen to be carried by the roof; in erecting and constructing under the supervision of its vice-principals a defective girder insufficient to carry the weight of the roof and the material and workmen to be supported thereby; in placing a certain support upon a defectively filled place in the ground, which the defendant company knew to be defective and would settle; in failing properly to inspect the said roof structure prior to sending workmen and material thereupon; in failing to warn petitioner of the defective construction of the section that had been thus defectively constructed by its vice-principals. Because the defendant company did not, as the building progressed in its erection, make the same safe, secure, and stable in its permanent and completed portions; . . and in placing upon said section a greater quantity of building material than the same could carry, the defendant company having placed on said roof approximately 20,000 pounds of men and material, when the same was so defectively constructed that it would not carry the same."

The amendment to the petition clearly takes the case out of the ruling in the case of *Byrd* v. *Thompson,* supra, as it alleges that the injury to the plaintiff was not due to the negligence of fellow servants; that the servant had no knowledge of the defects complained of, but that the master had knowledge thereof and failed to disclose the defects to the plaintiff, and there is also an allegation that "roof-girder H, the flooring joists on top thereof, and the sheathing nailed on top of the roof-flooring joists, were permanent structures. They had been completed." The issue to be determined here arises on a demurrer to the petition, and all well-pleaded matters in the petition must be accepted as true. It is therefore held: (1) that the amendment to the petition did not set out a new and distinct cause of action (see *City of Columbus* v. *Anglin,* 120 *Ga.* 785 (5,6), 789 (3,4,5), 796 (6).

48 S. E. 318); and (2) that the petition as amended set out a cause of action, and the demurrers thereto were properly over-ruled.

*Judgment affirmed.   Broyles, C. J., and Luke, J., concur.*