## INLAND STEEL COMPANY v. VOUTOS

[No. 17,726. Filed February 2, 1948. Rehearing denied March 17, 1948. Transfer denied May 25, 1948.]

*Dorsey, Travis, & Tinkham,* of Hammond, and *Baker & Daniels* and *Karl J. Stipher,* all of Indianapolis, attorneys. for appellant.

*Wildermuth, London, & Nehrig,* of Gary, attorneys for appellee.

CRUMPACKER, J.—Through appropriate pleadings and a subsequent hearing and review by the full Industrial Board of Indiana the appellee was awarded compensation for total disability resulting from silicosis contracted in the performance of his duties while an employee of the appellant. The award is challenged through this appeal primarily on the theory that there is a total lack of evidence, direct and inferential, tending to prove that the appellee was exposed to silica dust which had any direct causal connection with his work.

It is conceded that the appellee had silicosis when he left the appellant's employment on April 19, 1946, and that he had been employed by the appellant continuously on the same job in the same plant for approximately 9 years prior thereto. These facts alone however warrant no inference that the appellee was exposed to the hazards of silicosis because of and in the course of his employment. When the appellee sought compensation for his disability he assumed the burden of proving that his employment exposed him to silicosis and evidence of such exposure is just as necessary to a recovery as is evidence that he is afflicted with the disease itself.

We understand that, according to the standard determined by the United States Department of Labor, industrial silicosis, in a disabling degree, is never present in human lungs unless the victim of the disease has been exposed, for a 40-hour week over a period of approximately 5 years, to air bearing 10 million dust particles per cubic foot of which 35% is silicon dioxide ranging in size from 1 to 3 microns. The appellee was under no burden of proving an exposure meeting the requirements of this or any other scientific formula but he was required to prove

an exposure to silica dust as a consequence of ·his employment and such exposure, in connection with the presence of the disease itself, will support the inference that silica dust was present in sufficient quantity and concentration to account for his affliction. *Harbison-Walker Refractories Co.* v. *Turks* (1942), 110 Ind. App. 563, 39 N. E. 2d 791; *Harbison-Walker Refractories Co.* v. *Harmon* (1943), 114 Ind. App. 144.

The evidence in this case establishes the following facts beyond dispute. Some 30 years ago the appellee worked for the Pittsburgh Plate Glass Company for 3½ years in and about a plant where glass was made but he had nothing to do with the actual manufacturing process. He first went to work for the appellant in 1922 as a "heater" in which capacity he worked about furnaces used for heating steel preparatory for its being rolled into sheets. On alternate Sundays the heaters cleaned out furnaces by scraping off scale and dust from brick linings. In 1926 he opened a grocery store in Chicago but in a short time gave up his business and did various odd jobs for private employers. In 1929 he returned to the appellant and worked for about 7 months when he quit to take employment with a company engaged in making paper napkins. In 1934 he again returned to the appellant as an overhead crane operator in its 28″ mill and 2 years later was transferred, in the same capacity, to the 44″ mill where he worked continuously until he retired on April 19, 1946. During all the time the appellee worked in the 44″ mill there seems to have been nothing there to give origin to silica dust except possibly the brick floor in that part of the building where finished coils of steel were stacked preparatory to removal to another plant. There was dust in the air continually

which was caused by scale off the steel and an occasional sweeping of the brick floor. Within the last year or two the appellant has taken atmospheric tests periodically in the 44″ mill which revealed a dust count of 8 to 9 million particles per cubic foot of which $12\frac{1}{4}\%$ was silica and silicates. Tests made in the open air within a radius of 3 miles from the mill showed practically the same analysis. A series of x-ray films of the appellee's chest, taken under the direction of the appellant, from October 22, 1937, to April 29, 1946, indicate a bilateral fibroid tuberculosis process which has slowly and insiduously developed, through the years, into a definite silicosis as of April 29, 1946. Whether such silicosis was disabling or not was a matter of sharp dispute between the medical experts who testified in the case.

The appellant insists that on this state of the record the appellee's right to recover is a pure question of law which the Industrial Board decided erroneously because the undisputed evidence shows (1) no exposure to silica dust in sufficient concentration to cause silicosis or to aggravate a pre-existing silicosis to the stage of disablement; and (2) the appellee's exposure was in common with that of the general public.

It is true that the only evidence of exposure to the hazards of silicosis by reason of the appellee's employment indicates that silica dust was not present in sufficient quantity and concentration to cause the inception of the disease according to the generally accepted scientific formula. There is evidence however from which the board was justified in inferring that the appellee was suffering from a pre-existing silicosis when he went to work in the 44″ mill in 1936. There is further evidence that thereafter he was exposed to air laden with 8 to 9 million dust

particles per cubic foot of which $12\frac{1}{4}\%$ was silica and silicates. His pre-existing silicosis became progressively worse and it seems to us that, although the concentration of silica dust may not have been sufficient to have originated the disease, it is reasonable to infer that it was sufficient to aggravate it to the point of disablement. Such inference stands unchallenged by any evidence to the contrary.

As to the appellee's exposure being in common with that of the general public we think it sufficient to say that the only atmospheric tests outside the mill were made during the last year or two of the appellee's employment. The evidence is silent on the question of public exposure during the many years the appellee worked in the 44″ mill prior to such outside tests.

This court cannot concern itself with the preponderance of the evidence. On the theory that the record shows some evidence, together with reasonable inferences drawn therefrom, which supports the award the same must be affirmed. The decedent's death during the pendency of this appeal has been suggested and we therefore affirm said award as of October 1, 1947.

NOTE.—Reported in 77 N. E. 2d 126.