MERCATANTE *v.* MICHIGAN STEEL CASTING COMPANY.

1. WORDS AND PHRASES—PNEUMOCONIOSIS.
    Pneumoconiosis is an abnormal or diseased dust condition of
    the lung.

2. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE AMENDMENT
    —SILICOSIS—PNEUMOCONIOSIS.
    Since the effective date of the amendatory act broadening the
    occupational disease amendment to the workmen's compensa-
    tion act, the differentiation between silicosis and ' pneu-
    moconiosis has become unimportant (Act No. 10, pt. 7, § 2,
    Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub.
    Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

3. SAME—PNEUMOCONIOSIS—CHIPPER—GRINDER.
    Record supported finding of department of labor and industry
    that total disability of air hammer chipper and hand grinder
    for defendant steel casting company was due to silicosis, a
    disease included within the term "pneumoconiosis," when due
    to "cutting * * * grinding or polishing of metal" for
    which compensation was payable under the workmen's com-
    pensation act as amended (Act No. 10, pt. 7, § 2, Pub. Acts
    1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts
    1937, and amended by Act No. 245, Pub. Acts 1943).

    BOYLES, NORTH, and DETHMERS, JJ., dissenting in part.

Appeal from Department of Labor and Industry.
Submitted January 8, 1948. (Docket No. 38, Calen-
dar No. 43,801.) Decided April 5, 1948.

Michael A. Mercatante presented his claim for
compensation against Michigan Steel Casting Com-
pany, employer, and Michigan Mutual Liability Com-
pany, insurer, for occupational disease. Award to
plaintiff. Defendant appeals. Affirmed.

*Buell A. Doelle,* for plaintiff.

*L. J. Carey* and *Geo. J. Cooper,* for defendants.

BUSHNELL, C. J.   Plaintiff Michael A. Mercatante was employed by defendant Michigan Steel Casting Company in September of 1916.   He first worked as an air hammer chipper and later as a hand grinder. Following an operation for hernia in 1941, he did inspection work in the same room where he had worked as a chipper and grinder.   He stopped work on December 12, 1943, when he was hospitalized for influenza, followed by pneumonia.   On January 8, 1944, he was transferred to Herman Kiefer Hospital.

It was stipulated that if Dr. Paul T. Chapman, the director of tuberculosis hospitalization and field service for the Herman Kiefer Hospital was produced, he would testify that Mercatante was—"first seen in the Herman Kiefer Clinic for X-ray on December 9, 1937.   He was next heard from in 1944, when St. Mary's Hospital reported that he was ill. He was then hospitalized at the general hospital on January 3, 1944.   Later on, January 8, 1944, he was transferred to Herman Kiefer Hospital and has been in this hospital from that time to the present date.   His present condition is quite poor as he has silico tuberculosis, the tuberculosis has been progressing and involving more of the lungs during his hospital stay and his prognosis at the present time is hopeless.   He gives a long history of exposure to dust, working in a foundry.   When he was first seen in 1937 a diagnosis of third-degree silicosis with superimposed tuberculosis was made.   It seems obvious from the history and from the clinical course from the time this man was first seen the silicosis preceded by many years of the development of tuberculosis."

After a hearing before the deputy commissioner, plaintiff received an award of $21 per week for total disability from December 12, 1943, until further order, but not to exceed a total of $750. Upon review of defendants' appeal from this award, the department of labor and industry entered an order granting Mercatante compensation of $21 per week for total disability from December 12, 1943, until further order, but not to exceed the aggregate sum of $4,000.

The department stated in its opinion:

"There can be no doubt that the last injurious exposure to the hazard of free silica occurred after the effective date of the occupational disease amendment," namely, October 29, 1937. See schedule of diseases, Act No. 10, pt. 7, § 2, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937.* Section 2 of part 7 as originally enacted in 1937 provided:

"Disabilities arising from      Caused by
\*   \*   \*

"30.  Silicosis              .    Mining
"31.  Pneumoconiosis              Quarrying, cutting, crushing, grinding or polishing of metal."

The department said:

"The term 'pneumoconiosis' is recognized as a generic term used to cover all dust diseases of the lungs. The word 'silicosis' is used to describe a specific dust disease due to the inhalation of free silica. The term 'pneumoconiosis' includes the term 'silicosis.' It must be presumed that the legislature, when it placed the schedule of diseases in part 7, must have intended that pneumoconiosis, even

---

* See Comp. Laws Supp. 1940, § 8485-2, Stat. Ann. 1942 Cum. Supp. § 17.221.—REPORTER.

though caused by the inhalation of free silica, if con-
tracted by an employee who was engaged in 'quarry-
ing, cutting, crushing, grinding or polishing of
metal' came within the scope of the schedule and
further that if his disability was due to pneumoco-
niosis contracted in such an occupation, he would
be entitled to benefits provided by the amendment
as originally enacted.   Likewise, it would seem that
when the legislature used the term 'pneumoconiosis'
which covers all dust diseases, it intended to provide
benefits for disability from all dust diseases which
were caused by 'quarrying, cutting, crushing, grind-
ing or polishing of metal,' regardless of what the
specific disease might be.. In this case the specific
disease, silicosis, was caused by 'quarrying, cutting,
crushing, grinding or polishing of metal.'   It is well
known that a silicotic lung provides a very fertile field
for the activity of tubercular bacilli.   Tuberculosis is
quite frequently a complication of silicosis.

"The dust disease which is the cause of plaintiff's
total disability is one which was listed in the sched-
ule in section 2 of part 7 when that part was origi-
nally added to the compensation act so the maximum
benefit payable must be computed from October 29,
1937, the effective date of part 7."

The department held that Mercatante was totally
disabled by reason of "pneumoconiosis, more spe-
cifically; silicosis, which was caused by 'quarrying,
cutting, crushing, grinding or polishing of metal' and
is due to causes and conditions which are characteris-
tic of and peculiar to the business of the Michigan
Steel Casting Company and which arose out of and in
the course of his employment by that employer.   We
find December 12, 1943, the last day of work in the em-
ployment in which he last was subjected to the con-
ditions resulting in disability, to be the date of in-
jury.   We further find December 12, 1943 to be the
date of disablement.   The date of disablement oc-

curred in the 74th calendar month after the effective date of Act No. 61, Pub. Acts 1937. Plaintiff is therefore entitled to compensation of $21 per week for total disability from December 12, 1943 until the further order of the commission but not to exceed the aggregate sum of $4,000."

Webster's International Dictionary (2d Ed.) defines the word "pneumoconiosis" by its derivation from three Greek words, "pneumon," meaning lung; "konio," meaning dust; and "osis," meaning an abnormal or diseased condition. Hence a dictionary definition of this pathological condition would be an abnormal or diseased dust condition of the lung.

Defendants argue that the record does not "support the determination that the disability of plaintiff is due to the dust disease of silicosis as found by the deputy commissioner," and that the department is not "justified in determining that the silicosis suffered by plaintiff was pneumoconiosis in the absence of any such determination in the record." This argument might be answered by simply approving the reasoning of the department, just quoted, and by applying the pathological definition just given.

*Sutter* v. *Kalamazoo Stove & Furnace Co.*, 297 Mich. 226, decided April 8, 1941, is authority for limiting the payment of compensation to silicosis arising out of mining, and that tuberculosis is not compensable. It is, also, authority, however, for the proposition that pneumoconiosis is compensable under the amendment of 1937. (Act No. 10, pt. 7, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 8485–1 *et seq.*, Stat. Ann. 1940 Cum. Supp. § 17.220 *et seq.*]), when it is caused by the "quarrying, cutting, crushing, grinding or polishing of metal." Following decision

in the *Sutter Case* the legislature in 1943 amended part 7 by striking therefrom the schedule of diseases and provided for recovery for "a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment." Section 1, part 7, workmen's compensation law, as amended by Act No. 245, Pub. Acts 1943, effective July 30, 1943 (Comp. Laws Supp. 1945, § 8485-1, Stat. Ann. 1947 Cum. Supp. § 17.220).

It should be noted that the date of plaintiff's disablement, *viz.,* December 12, 1943, was almost six months after the effective date of Act No. 245, Pub. Acts 1943, which deleted the schedule of diseases from part 7 of the workmen's compensation act and substituted in place thereof the language just quoted. Since that date any differentiation between silicosis and pneumoconiosis becomes unimportant.

The situation disclosed in the instant case is similar to that in *Gerlesits* v. *Lakey Foundry & Machine Co.,* 319 Mich. 229, where a like argument by defendant was discussed. Decision in the *Gerlesits Case* is controlling here. See, also, *Stewart* v. *Lakey Foundry & Machine Co.,* 311 Mich. 463, and *Thomas* v. *Continental Motors Corp.,* 315 Mich. 27, both of which were decided after the effective date of the 1943 amendment, *supra.*

The department properly applied these authorities to the facts of the instant case. The record supports the department's determination that the disability suffered by plaintiff is due to pneumoconiosis.

The award entered upon such determination is affirmed, with costs to appellee.

Sharpe, Reid, Butzel, and Carr, JJ., concurred with Bushnell, C. J.

North, J. *(concurring in part, dissenting in part)*. I concur in part in the result reached by Chief Justice Bushnell, but I am not able to concur in the particular hereinafter noted.

Plaintiff's disablement was due to silicosis. The department so found in these words: "pneumoconiosis, more specifically, silicosis." Plaintiff's right to compensation accrued December 12, 1943, and was governed by part 7 of the workmen's compensation law, as amended by Act No. 245, Pub. Acts 1943.* He could not have been awarded compensation under part 7 of the act as added to the compensation law in 1937 (Act No. 61, Pub. Acts 1937) for two reasons. (1) Disability caused by silicosis was not compensable prior to the 1943 amendment except the disease was contracted incident to mining, and plaintiff herein was not engaged in mining. *Sutter v. Kalamazoo Stove & Furnace Co.*, 297 Mich. 226. And (2) the otherwise pertinent portions of part 7 enacted in 1937 were repealed approximately four months before plaintiff's disablement developed. "In determining benefits under the act that law controls which is. in effect when the cause of action accrues.". *Gerlesits v. Lakey Foundry & Machine Co.*, 319 Mich. 229, 238, citing numerous cases. But by Act No. 245, Pub. Acts 1943, which controls in the instant case, right of compensation for disability resulting from silicosis was materially broadened, and justifies granting compensation to plaintiff under the record before us. Act No. 10, part 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 and amended by Act No. 245, Pub. Acts 1943, in part reads:

"In the event of temporary or permanent total disability or death from silicosis or other dust dis-

---

* Comp. Laws Supp. 1940, 1945, § 8485–1 *et seq.*, Stat. Ann. 1947 Cum. Supp. § 17.220 *et seq.*—Reporter.

ease, notwithstanding any other provisions of this act, compensation shall be payable under this part to employees or to their dependents in the following manner and amounts."

But it seems clear that the department was in error in its method of determining the aggregate amount of compensation awarded to plaintiff. This error resulted from the department having assumed that prior to the 1943 amendment silicosis was included in the term "pneumoconiosis;" and therefore regardless of the limitation of granting compensation for disablement resulting from "silicosis caused by mining" as provided in the 1937 act, still disablement from silicosis might be made compensable by reasoning that it was included in "pneumoconiosis" in the 1937 act. By so reasoning the department was able to fix the aggregate of plaintiff's compensation at the maximum of $4,000, whereas otherwise it would have been limited to $750, as determined by the deputy commissioner. The cases cited in my Brother's opinion, wherein like reasoning has been used as to silicosis being included in pneumoconiosis, arose since the 1943 amendment of part 7; and since that amendment that type of reasoning is entirely permissible; but prior thereto such reasoning would have defeated the clear intent of the 1937 act as applied to silicosis. As hereinbefore noted our holdings in cases which arose prior to the effective date of the 1943 amendment were that: "Silicosis is only compensable   *   *   *   when it is caused by mining." *Sutter* v. *Kalamazoo Stove & Furnace Co., supra.* It would seem quite impossible to reach any other conclusion if fair consideration is to be given Act No. 61, Pub. Acts 1937, which added part 7 to the workmen's compensation law. In listing silicosis under item 30 of the schedule, included in part 7, as an occupational disease, the legislature

limited it to silicosis "caused by mining." Certainly it would have been meaningless to have embodied silicosis in that limited sense in item 30 if, as the department reasoned in the instant case, silicosis in general was to be considered as included in pneumoconiosis which was item 31 in the schedule. To so construe the statute is to say that the legislature did a senseless thing when it specifically listed silicosis in a limited sense as item 30 of the schedule, but by item 31 intended silicosis should also be included in its broader unlimited sense in pneumoconiosis. As above noted, since the repeal of the 1937 schedule by the 1943 act, silicosis as an occupational disease may be considered as a type of pneumoconiosis as was done in the cases cited in the Chief Justice's opinion; but that was not permissible prior to the 1943 amendment. It follows that the department was in error in fixing the aggregate of compensation to plaintiff on the assumption that silicosis prior to the 1943 amendment could be considered as an occupational disease included in pneumoconiosis and if total disablement resulted therefrom gave rise to right of compensation. In determining plaintiff's aggregate or possible total compensation the department should have been governed by the effective date of Act No. 245, Pub. Acts 1943 (July 30, 1943), instead of the effective date of Act No. 61, Pub. Acts 1937 (October 29, 1937). This conclusion is necessitated by the proviso in section 4, part 7, of the 1943 amendment to the statute which reads:

· "*Provided,* That where silicosis or other dust diseases not theretofore compensable, are first made compensable by any amendment to the workmen's compensation law, then in such instances the graduated benefit provision of this section shall begin to apply to disability or death resulting from such

diseases as of the effective date of such amendment." Act No. 10, pt. 7, § 4, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943.

As to plaintiff's *right to receive* compensation the holding of the department should be affirmed; but the award should be modified wherein it provides that the possible total amount of plaintiff's compensation is "not to exceed the aggregate sum of $4,000," and in lieu thereof provide that the possible aggregate sum of plaintiff's compensation shall not exceed $750, which is the correct amount when computed by the method provided in section 4, part 7 of the act, as embodied in Act No. 245, Pub. Acts 1943, effective July 30, 1943.

The case should be remanded to the department for entry of an award in accordance herewith. Neither party having fully prevailed on this appeal, no costs are awarded.

BOYLES, and DETHMERS, JJ., concurred with NORTH, J.